## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BROOK DANIEL                          )
76 P St. NW                           )
Washington, DC 20001                  )
                                      )
SAMANTHA PARK                         )
3850 Tunlaw Road NW, Apt. 410         )
Washington, DC 20007                  )        Civil Action No. _____
                                      )
JESSICA LAVRINOVICH                   )        **JURY TRIAL DEMANDED**
1300 S Barton St., Unit 320           )
Arlington, VA 22204                   )
                                      )
VICTOR MILLER                         )
5630 Livingston Terrace, Apt. 201     )
Oxon Hill, MD 20745                   )
                                      )
TREVOR TAYLOR                         )
5129 8th St. NW                       )
Washington, DC 20011                  )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )
                                      )
34 FLOOR HOSPITALITY L.L.C.           )
4423 Wagon Trail Ave.                 )
Las Vegas, NV 89118                   )
                                      )
        Defendant.                    )

## <u>COMPLAINT</u>

1.      Plaintiffs are current and former employees of the Defendant, 34 Floor Hospitality

L.L.C. ("34th Floor Hospitality"), who have worked as servers and/or bartenders at the restaurant

Dirty Habit in Washington, DC. Named Plaintiffs Brook Daniel and Samantha Park ("Named

Plaintiffs") bring this action as a collective action in accordance with 29 U.S.C. § 216(b) of the

Fair Labor Standards Act (FLSA) and as both a collective and class action pursuant to the District

of Columbia Minimum Wage Revision Act (DCMWRA), D.C. Code § 32-1012, against the Defendant on behalf of themselves and all others similarly situated because of Defendant's unlawful deprivation of Plaintiffs' rights to the minimum wage and overtime pay. Named Plaintiffs Brook Daniel and Samantha Park also bring this action as a class action on behalf of themselves and all others similarly situated in accordance with Fed. R. Civ. P. 23. In addition, Plaintiffs Brook Daniel and Samantha Park bring claims of unlawful retaliation under 29 U.S.C. § 215(a)(3) and D.C. Code § 32-1010(a)(3). Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 and compensation, damages, equitable and other relief available under the FLSA, as amended, 29 U.S.C. § 201 *et seq*., and the DCMWRA, D.C. Code § 32-1001, *et. seq*.

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred on this Court by 29 U.S.C. § 216(b), 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 28 U.S.C. § 1367(a).

3.      Venue lies within this district pursuant to 28 U.S.C. § 1391.

## PARTIES

4.      At all times material, each of the Plaintiffs listed in Exhibit A has been employed by Defendant 34th Floor Hospitality in the position of server and/or bartender at Dirty Habit, a restaurant operated and managed by Defendant in Washington, DC. In addition to Named Plaintiffs Brook Daniel and Samantha Park, additional opt-in Plaintiffs listed in the caption have each given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b) and D.C. Code § 32-1012(b). Their consent forms are appended to this Complaint as Exhibit A. Named Plaintiffs Daniel and Park bring this action as a collective action on behalf of themselves and all others similarly situated in accordance with 29 U.S.C. § 216(b) and the DCMWRA.

5.      Named Plaintiff Brook Daniel was employed by Defendant at Dirty Habit as a

bartender, from at least the time Defendant began managing Dirty Habit in approximately 2018 until January 5, 2022, the date of his unlawful termination.

6.      Named Plaintiff Samantha Park was employed by Defendant at Dirty Habit as a server from July 2021 through February 5, 2022, the date of her unlawful termination.

7.      Defendant 34th Floor Hospitality is a corporation headquartered at 4423 Wagon Trail Ave., Las Vegas, Nevada 89118. Defendant does business in the District of Columbia through its partnership with the Pebblebrook Hotel Trust at the Kimpton Hotel Monaco. Defendant's registered agent for service of process is O'Reilly Law Group, LLC, 325 South Maryland Pkwy., Las Vegas, NV 89101.

8.      Defendant is the "official management and operation company" for Dirty Habit, a restaurant located within the Kimpton Hotel Monaco at 555 8th St. NW, Washington, DC 20004. *See* 34 Floor, "Dirty Habit," http://34floor.com/dirty-habit (last accessed Mar. 16, 2022).

9.      Defendant 34th Floor Hospitality is an "employer" within the meaning of 29 U.S.C. §203(d), and D.C. Code § 32-1002(3). Defendant is also a "person" within the meaning of 29 U.S.C. § 203(a).

10.     At all times material to this action, Defendant has been an enterprise engaged in commerce as defined by 29 U.S.C. § 203(r)(1), and its annual dollar business volume has exceeded $500,000.

11.     At all times material herein, and as described above, Defendant has been actively conducting business in the District of Columbia.

## **FACTS**

12.     Defendant operates and manages Dirty Habit, a restaurant located within the Kimpton Hotel Monaco in Washington, DC, through a partnership with Pebblebrook Hotel Trust.

The restaurant first opened in 2016. Upon information and belief, 34th Floor Hospitality began managing it in approximately 2018.

13.     Plaintiffs are or were servers and/or bartenders for Defendant at Dirty Habit since on or before April 8, 2019.

14.     Plaintiffs, as well as similarly situated servers and bartenders, regularly received more than $30.00 a month in tips.

15.     At all times relevant herein, Defendant employed the tip credit and paid Plaintiffs and those similarly situated at approximately the tipped wage pursuant to the DCMWRA for all of their hours of work, regardless of whether they were performing tip generating duties. The lower tipped wage was $3.89 from July 1, 2018, through June 30, 2019; $4.45 per hour from July 1, 2019, through June 30, 2020; $5.00 per hour from July 1, 2020, through June 30, 2021; $5.05 from July 1, 2021, through June 30, 2022. Defendant did not pay Plaintiffs at the applicable full minimum wage rate, and instead paid Plaintiffs at or slightly above the lower tipped wage rate.

16.     The full minimum hourly wage in the District of Columbia has been as follows: $13.25 from July 1, 2018, through June 30, 2019; $14.00 from July 1, 2019, through June 30, 2020; $15.00 from July 1, 2020, through June 30, 2021; and $15.20 per hour from July 1, 2021, through June 30, 2022.

17.     While working for Defendant, Plaintiffs and those similarly situated were required to purchase equipment for use while at work (i.e., tools of the trade) including, but not limited to a lighter, black click-top pens with no branding, corkscrew, notepads, and—during the COVID-19 pandemic—black masks without branding or logos.

18.     Defendant requires servers and bartenders to report to work approximately 1-2 hours before 5:00 pm, which is when the restaurant opens for customers. Plaintiffs and others

similarly situated clocked in through the Defendant's timekeeping system immediately upon arriving to work.

19.     During this mandatory pre-shift time, Defendant required Plaintiffs and similarly situated servers and bartenders to perform pre-shift non-tip generating work. Such work included, but was not limited to, rearranging and moving furniture to set up for events and to return to storage areas, stocking the bar, building up and breaking down the outdoor seating area, cleaning such as mopping and/or wiping down the coffee station, cleaning the bottom of wine coolers, and taking out the trash. During this pre-shift time, there are no customers in the restaurant from which tips can be earned. Yet, Plaintiffs and those similarly situated were paid the lower tipped minimum wage for these non-tipped work activities.

20.     At approximately 4 pm each day, a manager holds a mandatory pre-shift meeting. Employees are paid only at the lower tipped wage rate for their attendance at this meeting.

21.     The restaurant's General Manager routinely urged employees to perform non-tipped work upon reporting to the restaurant pre-shift, both before and after the mandatory pre-shift meeting. For example, General Manager Stephanie Carre would say to the Plaintiffs: "If you are leaning, you could be cleaning." Defendant's expectations and rules require servers and bartenders to perform restaurant cleaning duties, including but not limited to mopping the floor, while at the restaurant before it is open to customers.

22.     Similarly, Defendant required Plaintiffs and similarly situated servers and bartenders to perform post-shift non-tip generating work for approximately 30 minutes to 1.5 hours beyond the restaurant's official "close." Such duties include, but are not limited to, cleaning tables (both inside and outside), mopping, taking out trash, sweeping the floor, resetting tables, and folding napkins. During this time, there are no customers in the restaurant from which tips can be

5

earned. Yet, Plaintiffs and those similarly situated were paid the lower tipped minimum wage for these non-tipped work activities.

23.     Plaintiffs were required to help convert the restaurant for private events by putting up tents and cleaning the patio space, among other things. Plaintiffs were required to do this before and/or after their shifts, as well as on Mondays when the restaurant is closed to customers. Although this set-up work occurs year-round, it occurs approximately 3 out of every 5 shifts during the restaurant's "busy season" from July through December. Plaintiffs and those similarly situated were paid the lower tipped minimum wage for these non-tipped work activities which are not related to their jobs as servers and bartenders and occur when the restaurant is closed to customers.

24.     During all times material herein, Plaintiffs and those similarly situated spent more than 20% of their work time during one or more workweeks engaged in non-tipped work including during times that the restaurant was closed to patrons, as described above.

25.     Defendant required Plaintiffs and other servers and bartenders to pool their tips and share tip proceeds with staff who do not customarily and regularly receive tips and gratuities. Specifically, Defendant required Plaintiffs as well as those similarly situated to share tips with two Bar Managers and one Shift Manager.

26.     Despite repeated inquiries by Named Plaintiffs and those similarly situated, Defendant never shared any information regarding the mechanics of the tip pool utilized by Defendant. Defendant failed to provide any written notice to Plaintiffs, as well as those similarly situated, of Defendant's tip sharing policy or of the amount of the employees' required tip pool contribution.

27.     Defendant failed to post the tip-sharing policy in the workplace.

28.     On January 5, 2022, Named Plaintiff Daniel approached one of the restaurant

managers who is responsible for payroll with questions regarding the Department of Labor's so-called 20/80 rule for tipped employee wages and showed the manager an article from a law firm's website discussing this rule. In response, the manager volunteered to contact the Human Resources department, claiming she did not know about this rule. The General Manager overheard the conversation and asked what Named Plaintiff Daniel and the manager were discussing, so Named Plaintiff Daniel also showed her the article.

29.     After this interaction and Named Plaintiff Daniel's questions regarding proper pay for tipped employees, Defendant stopped scheduling Named Plaintiff Daniel for any shifts as a bartender. As such, Named Plaintiff Daniel was effectively terminated on January 5, 2022, which was the final day he worked at Dirty Habit and the same day he questioned Defendant's pay practices.

30.     During a pre-shift meeting at the end of January 2022, one of the managers informed restaurant staff that a member of the "bar team" had been trying to rile up all the employees, stating that this individual does not work full time and is "not like us," but is stirring things up. The manager also claimed during the meeting that the information this individual was sharing with employees and managers regarding tipped wages was "not from a credible source." Because Named Plaintiff Daniel was the only bartender who was not on the work schedule and not in attendance at this particular pre-shift meeting, it was clear to staff that the manager's comments specifically referred to Brook Daniel.

31.     In January 2022, Named Plaintiff Park approached management on multiple occasions with questions regarding Defendant's tip pool. For example, during a pre-shift meeting in mid-January, Named Plaintiff Park asked a newly hired Bar Manager about whether he would be able to help the servers and bartenders understand the tip pool, since the General Manager had

been promising the staff an explanation of the tip pool once they had new manager. The Bar Manager was not able to answer Named Plaintiff Park's questions. Then, later that same day, the General Manager—who had not been at the pre-shift meeting—approached Named Plaintiff Park to tell her that she should not have been "drilling her bar manager at his first lineup."

32.     Within a day of the pre-shift meeting described in Paragraph 31, the General Manager approached Named Plaintiff Park on her way out of the restaurant at the end of her shift and said: "Look it's Sam, little Miss Transparency." The General Manager made this comment in front of other staff members, including the Executive Chef.

33.     On February 5, 2022, upon arriving at work, Named Plaintiff Park was instructed to speak to General Manager Stephanie Carre and two other restaurant managers in the downstairs office. During this meeting, Named Plaintiff Park was told by the management team to "stay in her lane" and that if she does so, the job at Dirty Habit could be "really profitable" and "lucrative" for her. The managers also alluded to Named Plaintiff Daniel, stating that there is only "one other employee that has a problem and you two are very close." The meeting lasted over an hour, at which time the managers directed Named Plaintiff Park to "go upstairs and make a lot of money today."

34.     Following the meeting on February 5, 2022, described above in Paragraph 33, Named Plaintiff Park began serving tables. However, approximately 10 minutes later, she was directed to go back downstairs to the restaurant office. The General Manager and one other manager were in the office and informed Named Plaintiff Park that they had been "advised to part ways with you." When Named Plaintiff Park asked for clarification on this statement, they refused to tell her who issued that directive or provide any further information. Named Plaintiff Park was not permitted to return to the floor of the restaurant to collect her personal items before she was

escorted out of the building. Named Plaintiff Park was terminated on February 5, 2022. Despite the fact that Named Plaintiff Park has repeatedly asked for notice of termination in writing, Defendant has refused to provide it to her.

## COLLECTIVE ACTION FOR VIOLATIONS OF THE FLSA AND DCMWRA

35.     Defendant has violated the provisions of the FLSA and DCMWRA, resulting in damages to Named Plaintiffs Daniel and Park, and those similarly situated to Named Plaintiffs, including the opt-in Plaintiffs listed in Exhibit A ("Opt-in Plaintiffs"), in the form of unpaid wages, liquidated damages, incurred and incurring costs, and reasonable attorneys' fees.

36.     As a result of the minimum wage and overtime violations of the FLSA and DCMWRA, the Named Plaintiffs, as well as those similarly situated to Named Plaintiffs, have suffered damages by failing to receive their lawful wages during their tenure of employment with Defendant. In addition to the amount of unpaid wages owing to the Named Plaintiffs, and those similarly situated to the Named Plaintiffs, they are also entitled to an additional amount as liquidated damages pursuant to 29 U.S.C. 216(b) and, and liquidated damages in an amount equal to three times their unpaid wages pursuant to D.C. Code § 32-1012(a).

37.     Named Plaintiffs Daniel and Park, and those similarly situated to Named Plaintiffs, are also entitled to an award of attorneys' fees pursuant to 29 U.S.C. § 216(b) and D.C. Code § 32-1012(c).

38.     Defendant's actions in failing to compensate Named Plaintiffs and other similarly situated employees of Defendant in accordance with the provisions of the FLSA and DCMWRA were willful and not in good faith.

39.     There are numerous other similarly situated employees and former employees of Defendant who have been improperly compensated in violation of the FLSA and DCMWRA who

would benefit from the issuance of court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Specifically, all employees and former employees of Defendant who have been employed by Defendant as servers and/or bartenders at Dirty Habit in Washington, DC should receive notice and the opportunity to join the present lawsuit.

## CLASS ACTION FOR VIOLATIONS OF THE DCMWRA

40.     Defendant has violated the provisions of the DCMWRA, resulting in damages to Named Plaintiffs Daniel and Park and all Class members in the form of unpaid wages, liquidated damages, incurred and incurring costs, and reasonable attorneys' fees.

41.     The DCMWRA permits class actions. D.C. Code § 32-1012(a); D.C. Code § 32-1308(a)(1)(C).

42.     The Class is defined as follows: All individuals employed on an hourly basis by Defendant at Dirty Habit in Washington, DC in the positions of server and/or bartender and who earned tips at any time within the past three years.

43.     Upon information and belief, there are approximately 40 members of the Class. Thus, the Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown,  Class members are known to Defendant, are readily identifiable, and can be located through Defendant's work and payroll records.

44.     There are questions of law and fact common to the members of the Class, including but not limited to whether Defendant violated the DCMWRA by failing to pay Named Plaintiffs Daniel and Park and all Class members at the applicable minimum wage and overtime rate by requiring them to contribute to an illegal tip pool, by requiring them to perform non-tipped side work and/or non-tipped work unrelated to the job of a server or bartender at the tipped wage rate when the restaurant was closed to patrons and at other times, and by requiring them to purchase

tools of the trade.

45.     Other common questions of law and fact include, but are not limited to:

(a)  Whether as a result of the minimum wage violations of the DCMWRA, Named Plaintiffs Daniel and Park, as well as all members of the Class, have suffered damages by failing to receive their lawful wages during their tenure of employment with Defendant and are entitled to an additional amount equal to three times the amount of unpaid wages pursuant to D.C. Code § 32-1012(b)(1); D.C. Code § 32-1308(1)(A)(ii).

(b)  Whether as a result of the minimum wage violations of the DCMWRA, Named Plaintiffs Daniel and Park and the members of the Class are also entitled to an award of attorneys' fees;

(c)  Whether Defendant's actions in failing to compensate Named Plaintiffs Daniel and Park and other members of the Class in accordance with the provisions of the DCMWRA were not in good faith.

46.     The claims of Named Plaintiffs Daniel and Park are typical of all members of the Class. Named Plaintiffs Daniel and Park have the same interests in this matter as all members of the Class.

47.     Named Plaintiffs Daniel and Park are adequate Class representatives, are committed to pursuing this action, and in the undersigned attorneys have retained competent counsel experienced in wage and hour law and class action litigation.

## COUNT ONE

### FAILURE TO PAY MINIMUM AND OVERTIME WAGES
### PURSUANT TO THE FAIR LABOR STANDARDS ACT

48.     Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 47, above.

49.     At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

50.     For the past three years, and prior, Defendant has applied a "tip credit" pursuant to 29 U.S.C. § 203(m) toward the minimum wage owed to Plaintiffs and other persons employed as servers and bartenders at Dirty Habit in Washington, DC.

51.     At all times material herein, Defendant has utilized a tip credit to pay Plaintiffs the minimum wage to which they have been entitled under 29 U.S.C. § 206(a)(1).

52.     For the past three years, and prior, Defendant has consistently denied Plaintiffs and similarly situated employees the minimum wage and overtime to which they are entitled under the FLSA by:

(a) Requiring Plaintiffs to purchase items or tools required to be used in performing their job such as corkscrews, pens, lighters, and notepads;

(b) Applying the tip credit to the Plaintiffs' work hours when they perform duties for which they cannot earn tips, such as time they spend sweeping, cleaning, and preparing the restaurant to open before their shifts and performing cleaning and work activities at the end of their shifts to close the restaurant, as well as time spent performing non-tipped work unrelated to the job of a server or bartender when the restaurant is closed to customers;

(c) Requiring Plaintiffs to share or "pool" tips and gratuities with employees who do not customarily receive tips and gratuities, including two Bar Managers and a Shift Manager; and

(d) Failing to provide proper notice of tip pooling or tip sharing arrangements.

53.   29 U.S.C. § 206(a)(1) provides that, at various times applicable to this case, employees shall be paid a wage rate of not less than $7.25 per hour. 29 U.S.C. § 203(m) provides that a tipped employee shall be paid a wage of not less than $2.13 per hour and that an employer may apply a tip credit for tips actually received between the wage the employer pays and the applicable minimum wage. 29 U.S.C. § 203(m) further provides that an employee paid pursuant to a tip credit must retain all tips, except insofar as an employer utilizes a tip pool among employees who customarily and regularly received tips. At all times material herein, Defendant has violated, and continues to violate, 29 U.S.C. § 206(a)(1), by failing and refusing to compensate Plaintiffs, and other employees occupying the same positions, the required minimum wage.

54.   Defendant has deprived Plaintiffs and other similarly situated employees of the minimum wage by requiring them to purchase equipment used primarily for the benefit of the employer. This results in a wage less than that to which plaintiffs are entitled under law – i.e., less than the minimum wage.

55.   Defendant has deprived the Plaintiffs and other similarly situated employees of the minimum wage by improperly applying the tip credit to hours of work in which Plaintiffs cannot earn tips. These hours include, but are not limited to, time performing pre-shift and post-shift set up and close out duties, attending mandatory pre-shift meetings, and performing duties when the restaurant is closed to customers, such as when Plaintiffs and other similarly situated employees

have performed cleaning services, rearranged and/or moved furniture to and from storage, set up tents for events, and similar types of activities.

56.     Defendant has also deprived Plaintiffs and other similarly situated employees of the minimum wage by requiring Plaintiffs to share tips and gratuities with employees who would not customarily or regularly receive tips and gratuities, including their managers.

57.     29 U.S.C. § 203(m) and 29 C.F.R. § 531.54 prohibits employers from keeping tips received by employees for any purpose, including through allowing managers or supervisors to retain any portion of employees' tips, regardless of whether the employer takes a tip credit.

58.     Where an employer takes a "tip credit," the employer may only require an employee to contribute tips to a tip pool if it is limited to employees who customarily and regularly receive tips. The employer must also notify the employees of any required tip pool contribution and may not allow managers and supervisors to receive tips from the tip pool. 29 C.F.R. § 531.54(c).

59.     For the past three years, and prior, Defendant has required Plaintiffs to contribute their tips to an unlawful tip pool. Specifically, Defendant has required Plaintiffs and similarly situated servers and bartenders to share their tips through the tip pool with at least three managers who do not regularly and customarily earn tips. Defendant has also failed to provide Plaintiffs and those similarly situated with any notice of the required tip pool contributions.

60.     Defendant's violations of the FLSA as alleged herein have been done in a willful and bad faith manner.

61.     As a result of the aforesaid willful violations of the FLSA, compensation has been unlawfully withheld by Defendant from Plaintiffs and similarly situated persons for which the Defendant is liable pursuant to 29 U.S.C. § 216(b), together with an additional equal amount as liquidated damages, as well as interest, reasonable attorneys' fees and the costs of this action.

62.     The employment and work records for Plaintiffs are in the exclusive possession, custody, and control of Defendant, and Plaintiffs are unable to state at this time the exact amount owing to each of them. Defendant is under a duty imposed by 29 U.S.C. § 211(c) and the regulations of the U.S. Department of Labor to maintain and preserve Plaintiffs' payroll and other employment records from which the amounts of the Defendant's liability can be ascertained.

<u>**COUNT THREE**</u>

**FAILURE TO PAY MINIMUM AND OVERTIME WAGES PURSUANT TO THE DISTRICT OF COLUMBIA MINIMUM WAGE REVISION ACT**

63.     Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 62, above.

64.     At all times material herein, Named Plaintiffs Daniel and Park and all members of the Class have been entitled to the rights, protections, and benefits provided under the DCMWRA, D.C. Code § 32-1001, *et. seq.*

65.     For the past three years, and prior, Defendant has applied a "tip credit" pursuant to D.C. Code § 32-1002(4) toward the minimum wage owed to Plaintiffs and other persons employed as servers and bartenders at Dirty Habit in Washington, DC.

66.     At all times material herein, Defendant has utilized a tip credit to pay Named Plaintiffs Daniel and Park, and all Class members, the minimum wage to which they have been entitled under D.C. Code § 32-1002(4).

67.     For the past three years, and prior, Defendant has consistently denied Named Plaintiffs Daniel and Park and other Class members the minimum wage and overtime compensation to which they are entitled under the DCMWRA by —

   (a) Requiring Plaintiffs to purchase items or tools required to be used in performing their job such as corkscrews, pens, lighters, and notepads;

(b) Applying the tip credit to Plaintiffs' work hours when they perform duties for which they cannot earn tips, such as time they spend sweeping, cleaning, and preparing the restaurant to open before their shifts and performing cleaning and work activities at the end of their shifts to close the restaurant, as well as time spent performing non-tipped work unrelated to the job of a server or bartender when the restaurant is closed to customers;

(c) Requiring Plaintiffs to share or "pool" tips and gratuities with employees who do not customarily receive tips and gratuities, including two Bar Managers and a Shift Manager; and

(d) Failing to provide proper notice of tip pooling or tip sharing arrangements.

68.    At various times applicable to this case, DCMWRA has provided, pursuant to D.C. Code § 32-1003, differing minimum wage rates. From July 1, 2018, through June 30, 2019, the minimum wage was $13.25 per hour. From July 1, 2019, through June 30, 2020, the minimum wage as $14.00 per hour. From July 1, 2020, through June 30, 2021, the minimum wage was $15.00. From July 1, 2021, through June 30, 2022, the minimum wage has been $15.20 per hour.

69.    D.C. Code § 32-1003(f) provides that a tipped employee may be paid a lower tipped hourly rate and that an employer may apply a tip credit for tips actually received between the wage the employer pays and the applicable minimum wage. D.C. Code § 32-1003(f) further provides that an employee paid pursuant to a tip credit must retain all tips, except insofar as an employer utilizes a tip pool among employees who customarily and regularly received gratuities. At all times material herein, Defendant has violated, and continues to violate, D.C. Code § 32-1003 by failing and refusing to compensate Plaintiffs, and other employees occupying the same positions, the required minimum wage.

70.     Defendant has deprived Named Plaintiffs Daniel and Park and all members of the Class of the minimum wage by requiring them to purchase equipment used primarily for the benefit of the employer. This results in a wage less than that to which plaintiffs are entitled under law – i.e., less than the minimum wage.

71.     Defendant has deprived Named Plaintiffs Daniel and Park, and all Class members, of the minimum wage by improperly applying the tip credit to hours of work in which Plaintiffs cannot earn tips. These hours include, but are not limited to, time performing pre-shift and post-shift set up and close out duties, attending mandatory pre-shift meetings, and performing duties when the restaurant is closed to customers, such as when Plaintiffs and other similarly situated employees have performed cleaning services, rearranged and/or moved furniture to storage, set up tents for events, and similar types of activities.

72.     Defendant has also deprived Named Plaintiffs Daniel and Park and all Class members of the minimum wage by requiring Plaintiffs to share tips and gratuities with employees who would not customarily or regularly receive tips and gratuities, including their managers.

73.     Under the DCMWRA, an employer may only take a "tip credit"—i.e., pay employees at the lower tipped wage rate—if it has provided employees with written notice of the tipped wage rules and, if tips are shared, of the employer's tip-sharing policy at both the time of hire and any time the policies are changed; the employer must also post the tip-sharing policy in the workplace. D.C. Code § 32-1003(g)(1)-(2). In addition, all gratuities received by employees must be retained by employees, except where gratuities are shared among employees who customarily receive gratuities. D.C. Code § 32-1003(g)(3).

74.     For the past three years, and prior, Defendant has required Named Plaintiffs and Class members to contribute their tips to an unlawful tip pool and has unlawfully paid Plaintiffs

and Class members at the tipped wage rate. Specifically, Defendant has required Named Plaintiffs and similarly situated servers and bartenders to share their tips through the tip pool with at least three managers who do not customarily receive gratuities. Defendant has also failed to provide Named Plaintiffs and Class members with written notice of the tip sharing policy and failed to post the tip sharing policy at the workplace.

75.     Defendant's violations of the DCMWRA as alleged herein have been done in a bad faith manner.

76.     As a result of the aforesaid willful violations of the DCMWRA, compensation has been unlawfully withheld by Defendant from Named Plaintiffs Daniel and Park and all Class members for which the Defendant is liable, together with an additional amount equal to three times the backpay as liquidated damages, as well as interest, reasonable attorneys' fees, and the costs of this action.

77.     The employment and work records for Named Plaintiffs and Class members are in the exclusive possession, custody, and control of Defendant, and Plaintiffs are unable to state at this time the exact amount owing to each of them. Defendant is under a duty imposed by D.C Code § 32-1008 to maintain and preserve Plaintiffs' payroll and other employment records from which the amounts of the Defendant's liability can be ascertained.

## COUNT THREE

### UNLAWFUL RETALIATION AGAINST BROOK DANIEL UNDER THE FLSA

78.     Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 77, above.

79.     The FLSA makes it unlawful to discharge or in any other manner discriminate against an employee because that employee filed a complaint, instituted, or caused to be instituted

any proceeding under the Act. 29 U.S.C. § 215(a)(3). The purpose of the anti-retaliation provision of the FLSA is to allow employees to report FLSA violations without fear of reprisal from their employer.

80.     Plaintiff Daniel engaged in a protected activity under the anti-retaliation provisions of the FLSA when he raised concerns to his employer regarding the payment of the tipped wage and the use of the tip pool on or around January 5, 2022.

81.     Defendant unlawfully retaliated against Plaintiff Daniel by discharging him on January 5, 2022, the date on which he raised questions and concerns regarding Defendant's wage and tip pool policies.

82.     Pursuant to 29 U.S.C. § 216(b), Plaintiff Daniel is entitled to any legal or equitable relief that is appropriate to effectuate the purpose of section 215(a)(3) of the FLSA. This includes reinstatement, payment of lost wages, liquidated damages, compensatory damages, and punitive damages as a result of Defendant's willful and knowing violation of the FLSA's anti-retaliation provisions.

83.     Plaintiff Daniel is also entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT FOUR

## UNLAWFUL RETALIATION AGAINST SAMANTHA PARK UNDER THE FLSA

84.     Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 83, above.

85.     The FLSA makes it unlawful to discharge or in any other manner discriminate against an employee because that employee filed a complaint, instituted, or caused to be instituted any proceeding under the Act. 29 U.S.C. § 215(a)(3). The purpose of the anti-retaliation provision

of the FLSA is to allow employees to report FLSA violations without fear of reprisal from their employer.

86.     Plaintiff Park engaged in a protected activity under the anti-retaliation provisions of the FLSA when she raised concerns to her employer regarding the payment of the tipped wage and the use of the tip pool on or around January and February 2022.

87.     Defendant unlawfully retaliated against Plaintiff Park by terminating her on February 5, 2022, mere weeks after she raised questions and concerns regarding Defendant's wage and tip pool policies.

88.     Pursuant to 29 U.S.C. § 216(b), Plaintiff Park is entitled to any legal or equitable relief that is appropriate to effectuate the purpose of section 215(a)(3) of the FLSA. This includes reinstatement, payment of lost wages, liquidated damages, compensatory damages, and punitive damages as a result of Defendant's willful and knowing violation of the FLSA's anti-retaliation provisions.

89.     Plaintiff Park is also entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

**COUNT FIVE**

**UNLAWFUL RETALIATION AGAINST BROOK DANIEL UNDER THE DCMWRA**

90.     Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 89, above.

91.     The DCMWRA makes it unlawful to discharge, threaten, penalize, or in any other manner discriminate or retaliate against an employee because that employee made a complaint to his or her employer, or any other person, that the employer has engaged in conduct that the employee reasonably and in good faith believes violates the DCMWRA. D.C. Code § 32-

1010(a)(3). The purpose of the anti-retaliation provision of the DCMWRA is to allow employees to report wage violations without fear of reprisal from their employer.

92.    There is a presumption that an adverse action is retaliatory where the employer, or any person acting on behalf of the employer, takes an adverse action against an employee within 90 days of the employee's engagement in protected activities. D.C. Code § 32-1010(b).

93.    Plaintiff Daniel engaged in protected activity under the anti-retaliation provisions of the DCMWRA when he raised concerns to his employer regarding the payment of the tipped wage and the use of the tip pool on or around January 5, 2022.

94.    Defendant unlawfully retaliated against Plaintiff Daniel by discharging him on January 5, 2022, the date on which he raised questions and concerns regarding Defendant's wage and tip pool policies.

95.    Pursuant to D.C. Code § 32-1011.01 and D.C. Code § 32-1311, Plaintiff Daniel is entitled to any legal or equitable relief that is appropriate to effectuate the purpose of the anti-retaliation provisions of the DCMWRA. This includes but is not limited to reinstatement, civil penalties, liquidated damages, front pay, and lost compensation.

96.    Plaintiff Daniel is also entitled to recover attorneys' fees and costs under D.C. Code § 32-1011.01 and D.C. Code § 32-1311(c)(4).

## COUNT SIX

### UNLAWFUL RETALIATION AGAINST SAMANTHA PARK UNDER THE DCMWRA

97.    Plaintiffs repeat and incorporate by reference the allegations set forth in Paragraphs 1 through 96, above.

98.    The DCMWRA makes it unlawful to discharge, threaten, penalize, or in any other manner discriminate or retaliate against an employee because that employee made a complaint to

his or her employer, or any other person, that the employer has engaged in conduct that the employee reasonably and in good faith believes violates the DCMWRA. D.C. Code § 32-1010(a)(3). The purpose of the anti-retaliation provision of the DCMWRA is to allow employees to report wage violations without fear of reprisal from their employer.

99.     There is a presumption that an adverse action is retaliatory where the employer, or any person acting on behalf of the employer, takes an adverse action against an employee within 90 days of the employee's engagement in protected activities. D.C. Code § 32-1010(b).

100.     Plaintiff Park engaged in protected activity under the anti-retaliation provisions of the DCMWRA when she raised concerns to her employer regarding the payment of the tipped wage and the use of the tip pool on or around January and February 2022.

101.     Defendant unlawfully retaliated against Plaintiff Park by terminating her on February 5, 2022, mere days after she raised questions and concerns regarding Defendant's wage and tip pool policies.

102.     Pursuant to D.C. Code § 32-1011.01 and D.C. Code § 32-1311, Plaintiff Park is entitled to any legal or equitable relief that is appropriate to effectuate the purpose of the anti-retaliation provisions of the DCMWRA. This includes but is not limited to reinstatement, civil penalties, liquidated damages, front pay, and lost compensation.

103.     Plaintiff Park is also entitled to recover attorneys' fees and costs under D.C. Code § 32-1011.01 and D.C. Code § 32-1311(c)(4).

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray that this Court grant relief against the Defendant as follows:

(a)     Enter a declaratory judgment declaring that Defendant has willfully and wrongfully violated its statutory and legal obligations and deprived Named Plaintiffs, Opt-in Plaintiffs, Class

members, and all others who are similarly situated of their rights, privileges, protections, compensation, benefits, and entitlements under the law, as alleged herein;

(b)     Order a complete and accurate accounting of all the compensation to which Named Plaintiffs Daniel and Park, Opt-in Plaintiffs, all others who are similarly situated, and Class members are entitled;

(c)     Award Named Plaintiffs Daniel and Park, Opt-in Plaintiffs, and all others who are similarly situated, monetary damages under federal law in the form of back pay compensation and benefits; unpaid entitlements; liquidated damages equal to their unpaid compensation;

(e)     Award Named Plaintiffs Daniel and Park, Opt-in Plaintiffs, all others who are similarly situated, and all members of the Class monetary damages under the DCMWRA in the form of back pay compensation and benefits; unpaid entitlements; and an additional amount equal to three times the amount of unpaid wages as liquidated damages;

(f)     Award Plaintiffs Daniel and Park damages reflecting lost wages and liquidated damages accrued as a result of Defendant's retaliatory conduct, as well as civil penalties, compensatory, liquidated, and punitive damages for harm suffered as a result of Defendant's retaliatory conduct;

(g)     Award Named Plaintiffs Daniel and Park, Opt-in Plaintiffs, all those similarly situated, and all members of the Class their reasonable attorneys' fees to be paid by the Defendant as well as the costs and disbursements of this action; and

(h)     Grant such other legal and equitable relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial in this action.

Dated: April 8, 2022    Respectfully submitted,

        _____*/s/ Molly A. Elkin*_____

        Molly A. Elkin (D.C. Bar No. 450295)
        Sarah M. Block (D.C. Bar No. 1026577)
        McGILLIVARY STEELE ELKIN LLP
        1101 Vermont Ave., NW
        Suite 1000
        Washington, DC 20005
        Telephone: (202) 833-8855
        Fax: (202) 452-1090
        mae@mselaborlaw.com
        smb@mselaborlaw.com

        *Attorneys for Plaintiffs*